UNITED STATE DISTRICT COURT
FOR THE COMMONWEALTH OF MASSACHUSETTS

*****************************************************
ERICK EASON,                                          *
                                                      *
                Plaintiff                             *
v.                                                    *
                                                      *
ANTHONY ALEXIS, JAMES CONLEY, THOMAS     *     C.A. No. 09-CV-11278-PBS
SULLIVAN, LYSANDER WRIGHT, THE CITY OF   *
BOSTON POLICE DEPARTMENT, and            *
EDWARD DAVIS, in his capacity as COMMISSIONER  *
of the BOSTON POLICE DEPARTMENT,         *
                                                      *
                Defendants                            *
*****************************************************

## PLAINTIFF ERICK EASON'S MOTION FOR SUMMARY JUDGMENT

Now comes the plaintiff, Erick Eason, who moves that this Honorable Court grant his

motion for summary judgment against Defendants Alexis, Conley, Sullivan and Wright for civil

rights violations by seizing Mr. Eason' in violation of his rights under Article 14 of the

Massachusetts Deceleration of Rights, arresting Mr. Eason without probable cause and charging

him with assault and battery on a police officer without basis.

## I.  STATEMENT OF THE CASE

Plaintiff Erick Eason brought his action pursuant to 42 U.S.C. § 1983 and the

Massachusetts Civil Rights Act against the City of Boston Police Department, and several of its

officers for civil rights violations and common law torts, committed when these officers

wrongfully seized and arrested Mr. Eason, using excessive force and injuring him as he was

leaving his grandmother's home at 214 Harvard Street, Dorchester on February 9, 2007, to go

work at the Brookline Stop & Shop, where he was scheduled to work an evening shift.

Defendants Alexis and Sullivan were questioning two other individuals in the hallway

when Mr. Eason passed by them on his way out of the apartment building.  The defendants claim

that they attempted to speak to Mr. Eason, but that he did not stop.  As Mr. Eason continued on

his way, defendants Sullivan and Alexis pursued him.  Mr. Eason exited the building and as he

came down the entryway stairs, defendant Conley, coming up the stairs, blocked his path,

causing a physical confrontation.  Mr. Eason ended up crashing over the handrail to his right and

landing on the parking lot below, where he suffered a severe and permanently debilitating

fracture in his ankle and where he was handcuffed and arrested by the defendant officers.

The plaintiff's claims are that the defendant officers violated his civil rights by using

excessive force and illegally stopping and arresting him, and for tort claims of assault and battery

and false imprisonment.  The plaintiff further claims that defendants Alexis, Conley and Sullivan

further violated his civil rights of Mr. Eason by wrongfully seeking a criminal complaint against

him, charging and prosecuting him with assault and battery on a police officer in order to hide

and cover up their wrongful arrest and other civil rights violations.

Plaintiff moves for summary judgment that the defendants lacked any reasonable

suspicion to pursue and seize Mr. Eason under the Fourth Amendment of the United States

Constitution and Article 14 of the Massachusetts Declaration of rights and that the defendants

lacked probable cause to arrest Mr. Eason and charge him with assault and battery on a police

officer.

## II.  STATEMENT OF UNDISPUTED FACTS

The plaintiff submits the following facts as undisputed for the purpose of summary

judgment only:

1.  On February 9, 2007, between 9:00pm and 10:00pm, defendant Boston Police

Officers James Conley, Anthony Alexis, Lysander Wright and Thomas Sullivan were dispatched

to 214 Harvard Street in Dorchester, in response to a 911 call from a woman reporting threats

made by a group of 10 females, and some males, in front of the building, one of whom claims to have had gun.  [Incident History- Detailed, **Exhibit A** here] sp]

2.   Upon their arrival, defendants Sullivan and Alexis did not see a group of females outside and entered the lobby of 214 Harvard Street, a multi unit brick apartment building, where they detained two men in the front lobby of the building, asking them if they had any information about an individual with a gun.  [Deposition of Anthony Alexis, **Exhibit B** hereto, p. 48, 51-52]

3.   While they were detaining the two individuals, defendant Alexis observed two males, one light skinned and the other dark, talking and walking towards the front doors and they appeared to be walking at a "quick pace" in a rush to leave the building.  [**Exhibit B**, p. 66, 75].

4.   When the lighter skin male, later identified as plaintiff Erick Eason, reached the glass door to exit 214 Harvard Street, defendant Sullivan stated "We're here for a person, a group with a gun.  Have you seen anything, heard anything?" and Mr. Eason responded "why are you stopping us?"  [**Exhibit B**, p. 68].

5.   Defendant Alexis claims that when defendant Sullivan asked again, Mr. Eason opened the door and exited the building.  [**Exhibit B**, p. 72]  Defendants Alexis and Sullivan following Mr. Eason out of the building.  [Deposition of Thomas Sullivan, **Exhibit C** hereto, p. 71 and **Exhibit B**, p. 107].

6.   As defendants Sullivan and Alexis began pursuit of Mr. Eason, defendant Sullivan made a radio broadcast informing defendant Conley that he was engaged in a foot pursuit.  [**Exhibit B**, p. 77]

7.   As Mr. Eason was exiting the building, defendant Conley was coming up the front stairs of the 214 Harvard Street and the two collided.  [**Exhibit B**, p. 84; Deposition of James Conley, **Exhibit D** hereto, p. 79].

8.   When defendant Conley saw Mr. Eason coming out from inside the building, he believed that defendant Sullivan did not want Mr. Eason to run out of the building.  [**Exhibit D**, p. 79]

9.   Defendant Conley admitted that he deliberately blocked Mr. Eason's way down the stairs, bracing for the contact when he saw Mr. Eason coming instead of moving to the side and allowing Mr. Eason to pass.  [**Exhibit D**, p. 81-82]

10.   The defendants' testimony differs as to what happened next.  Defendant Alexis testified that Mr. Eason was knocked back, took a step to the right and attempted to jump over the railing, but got his foot caught on the railing and fell to the ground.  [**Exhibit B**, p. 91] Defendant Sullivan testified that Mr. Eason was propelled over the railing by the force of the collision with defendant Conley.  [**Exhibit C**, p. 71]

11.  The defendants agree that Mr. Eason went over the railing of the porch and fell to the ground, fracturing his ankle.  [**Exhibit B**, p. 91, **Exhibit C**, p. 71]

12.  Defendant Alexis went down the stairs to where Mr. Eason was lying, on his stomach, and observed defendant Sullivan, standing over Mr. Eason, pointing his firearm at Mr. Eason.  [**Exhibit B**, p. 104]

14.  Defendant Alexis knelt to the ground and put handcuffs on Mr. Eason because "he was going to be placed under arrest for assault and battery on [defendant] Conley."  [**Exhibit B**, p. 106]

15. Although Defendant Sullivan testified that he not consider Mr. Eason under arrest, but was placed in handcuffs only "for officer safety", defendant Sullivan admitted that Mr. Eason was not free to leave.  [**Exhibit C**, p. 73-74, 83]

16.  The defendants searched the plaintiff, but did not find either a firearm or contraband of any kind on him.  [**Exhibit D**, p. 103-104]

17. Defendant Alexis accompanied Mr. Eason to the Boston Medical Center, maintaining custody over him.  [**Exhibit B**, p. 129]  At the hospital, Mr. Eason was diagnosed with a fractured ankle.  [Eric Eason's answers to defendants' first set of interrogatories, **Exhibit E** hereto, response 16]

18.  Defendants made application for a criminal complaint against Mr. Eason for assault and battery on a police officer.  [Application for criminal complaint, **Exhibit F** hereto]  This complaint was dismissed for lack of probable cause after a clerk's hearing on August 7, 2007. [**Exhibit B**, p. 136]

## III.  ARGUMENT

### A.  Standard for Summary Judgment

Rule 56[c] of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro 56[c].  "[S]ome alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 247-248 [1986] [emphasis in original].

The court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor" _Griggs-Ryan v. Smith_, 904 F.2d 112, 115 [1st Cir. 1990] but only if there is a "genuine" dispute as to the facts.

Once the moving party has met its burden, through the pleadings and established facts that are not in dispute, the party opposing the summary judgment may not rely on the pleadings or mere denials of the allegations. _Id_. at 256.  To defeat summary judgment, the nonmoving party must go beyond the pleadings and adduce some evidence showing that material facts are in dispute.  _Coletex Crop. v Catrett_, 477 U.S. 317, 324 [1986].  Rule 56 requires the nonmoving party to show through depositions, affidavits, answers to interrogatories and admissions on file that specific facts present a genuine issue for trial. _I_d. See also _Matushita Electric Industrial Co. v Zenith Radion Corp._, 475 U.S. 574 [1986].  An issue is a 'genuine' question of material fact if it is "sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." _National Amusements v. Town of Dedham_, 43 F.3d 731, 735 [1st Cir. , Mass. 1995].

**B.**      **The defendants' pursuit of Mr. Eason constituted an unlawful seizure under Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment.**

Massachusetts Courts consistently hold that, under Article 14 of the Massachusetts Declaration of Rights, "a pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area . . .without first responding to a police officer's inquiry, is the functional equivalent of a seizure." _Com. v. Stoute,_ _422 Mass. 782, (Mass.,1996)_

Here, defendants Alexis and Sullivan approached Mr. Eason as he was exiting 214 Harvard Street and defendant Sullivan asked Mr. Eason "can I talk to you for a second?" before Mr. Eason continued out the door.  [**Exhibit C**, p. 70]  Defendants Alexis and Sullivan then chased Mr. Eason out the door, intending to stop him so that they could detain and question him. [**Exhibit C**, p. 71 and **Exhibit B**, p. 107]

Defendant Sullivan testified at his deposition, correctly, that Mr. Eason was under no obligation to stop and speak with them.  [**Exhibit C**, p. 79-80, 84] Therefore, by the defendants' admission, Mr. Eason had no obligation to stop and answer their inquiries.  Mr. Eason did nothing wrong or even suspicious.  He merely continued past the defendants, as he was within his legal rights to do.  _Brown v. Texas_, 443 U.S. 47, (1979).

The defendant acknowledge that they pursued Mr. Eason because, as defendant Sullivan testified, "I wanted to talk to him."  [**Exhibit C**, p. 75]  Under Massachusetts law, where the defendants pursued Mr. Eason out of 214 Harvard Street in an attempt to stop him, they seized him, as "a stop is . . . a form of seizure in the constitutional sense" _Com. v. Stoute, 422 Mass. 782, (Mass.,1996)_

### 1.  <u>The defendants lacked any reasonable suspicion that would justify their seizure of Mr. Eason when they pursued him out of 214 Harvard Street.</u>

The defendants pursued Mr. Eason out of 214 Harvard Street, despite having no reasonable suspicion of any criminal activity on his part that would justify conducting a stop.  As the defendants acknowledged at their depositions, they had no information that Mr. Eason had an outstanding warrant or had exhibited any criminal activity prior to the collision with Defendant Conley.  [**Exhibit C**, p. 74-75, 80]

#### i.  <u>There was no report of a person with a gun</u>

The defendant officers were present at 214 Harvard Street because of a 911 call which the Boston Police Incident History [**Exhibit A** hereto] states was for a "approx 10 girls and some males out front" at the building, who the caller said "were saying they had a gun".  The call was not for a "man with a gun", but for a group of young mostly women, who the caller, a young female, claimed were harassing her, not for a person with a gun.

Thus the dispatch was for a group of teenage girls, one of whom **may** have had a gun. The dispatch did not contain a description of the individual who claimed to be in possession of the firearm, was not specific as to the gender of the individual and did not include the name of the individual who may have had a firearm.

While "A statement from a source can constitute the basis for probable cause, even if the source is previously unknown to the defendant" there must be, "a sufficient basis for crediting the source's reliability." _United States v. McFarlane_, 491 F.3d 53, 57 [1st Cir. Mass. 2007] [quoting _United States v. Vongkaysone_, 434 F.3d 68, 71 [1st Cir. Me. 2006]].  Here, the vague report of several women, and men, outside of the building, one of whom may have a firearm, is insufficient to allow the defendant officers to identify Mr. Eason as the individual who may have had a gun.

In _Commonwealth v. Blatz_, 9 Mass. App. Ct. 603 [Mass. App. Ct. 1980], officers received a tip that Blatz was trafficking in drugs.  Despite the specificity of the information naming Blatz as the drug dealer, officers did not have "probable cause to make an arrest, to make a warrantless search, to obtain a warrant to search Blatz, or to detain him" until a secondary officer made a plain view observation of envelopes of the type used to package drugs sticking out of Blatz's pocket.  _Id_. at 604.  As the Court of Appeals made clear, a tip, even one naming the defendant specifically in connection to a specific criminal activity, does not rise to the reasonable suspicion necessary to stop or detain an individual. _Id._

In _Commonwealth v. Thibeau_ police, patrolling at night in a high-crime area, saw a man riding a bicycle.  384 Mass. 762  [Mass. 1981]  The police pursued Thibeau based on the fact that bicycles were frequently used to transport narcotics, that they were in a high crime area and

that Thibeau turned his bicycle down a side street when the patrol car pulled alongside him.  The _Thibeau_ Court noted that "suspicion must be reasonable before the pursuit begins", _Id._ at 764, and held the stop and subsequent arrest were invalid as the officers had no reasonable suspicion that would justify stopping Thibeau when they commenced the pursuit.  Merely attempting to evade the police, even if that was what the plaintiff was doing, was insufficient justification to pursue him.  _Id._ at. 764.

Massachusetts Courts have consistently ruled that, in determining whether reasonable suspicion to make a stop exists, "The facts and inferences underlying the officer's suspicion must be viewed as a whole when assessing the reasonableness of his acts."  _United States v. Cortez_, 449 U.S. 411, 417-418, 101 S.Ct. 690, 694-695, 66 L.Ed.2d 621 (1981).  However, it has been established that in Massachusetts an individual's "flight from the officer's pursuit cannot be considered for this purpose" and the officer's "suspicion must be reasonable before the pursuit begins." _Com. v. Thibeau_, 384 Mass. 762.  In _Jackson v. Com._, 430 Mass. 260, 264 [Mass. 1999], citing the Court in _Thibeau,_ the Court noted that "Police activity cannot provoke the defendant into conduct that provides the basis for a search." _Id._ at n6.

### ii.  The defendant officers observed no criminal or suspicious behavior

Defendant Sullivan admits that when he first encountered Mr. Eason, he had no reason to suspect him of any crime at all, much less an reason to believe that Mr. Eason had a firearm. [**Exhibit C**, p. 75]  Mr. Eason made no furtive movements and exhibited no nervous behavior. Defendant Sullvan has testified that "When he [Mr. Eason] ran by me initially, he had not exhibited any criminal behavior." [**Exhibit C**, p. 77]  The defendant officers both acknowledge that Mr. Eason was under no obligation to speak to them and acknowledge that he had every right to continue on his way. [**Exhibit D**, p. 84]

### iii.  The location of the stop is not a basis for suspicion

The defendants will argue that 214 Harvard Street is a "high crime" area and that this, coupled with the nature of the call, will justify their pursuit of Mr. Eason.  However, presence in a high crime area does not contribute to an officer's ability to distinguish a suspect from any other citizen.  _Com. v. Cheek_, 413 Mass. 492, 497 (1993).

The defendants may not argue that because they were responding to a radio call for a person with a gun in a high crime neighborhood, that their pursuit of Mr. Eason was based upon reasonable suspicion.  A similar situation was confronted by the Supreme Judicial Court in _Com. v. Fraser_, 410 Mass. 541 (Mass.,1991), where officers responding to a report of a man with a gun in a high crime area conducted a stop of several young men.  There, however, the Court pointed to a number of factors, none of which are present here, to justify the stop, including that the officers were outnumbered, that the suspect was seen bending down behind a car and that the suspect refused to take his hands out of his pockets.  _Id_.  While remarking that the radio call and the location in a high crime area were factors, the Court relied on the fugitive and suspicious movements of the suspect to justify the stop.  _Id_.

Here, the defendants cannot justify their pursuit of the Mr. Eason based, as it was, solely on the nature of the call and the fact that the officers consider 214 Harvard Street to be a high crime area.

### iv.  The totality of the circumstances did not provide justification for
###        pursuing Mr. Eason

"[T]he facts and inferences underlying the officer's suspicion must be viewed as a whole when assessing the reasonableness of his acts."   _United States v. Cortez_, 449 U.S. 411, 417-418 (1981)  Here the defendants not only had insufficient information to produce a reasonable

suspicion of criminal activity by Mr. Eason: they had no information at all that Mr. Eason was engaged in any sort of criminal behavior.  He was simply a Black male leaving an apartment building.

The only basis for the pursuit of Mr. Eason was that there had been a radio call reporting that there **may** have been a person with a gun outside the building and that the building was located in what the defendants will argue is a high crime area.  There are no other factors, such as those relied upon in *Fraser*, that would justify pursuing Mr. Eason.  Thus, the pursuit and stop of Mr. Eason violated his rights under Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment of the United States Constitution.

**B.**     **The defendant officers lacked probable cause to arrest charge Mr. Eason with assault and battery on a police officer, as there was no basis to believe that the collision between Mr. Eason and defendant Conley was intentional and not accidental.**

As defendants Alexis and Sullivan pursued Mr. Eason out the front door of 214 Harvard Street, defendant officer Conley was coming up the front stairs.  [**Exhibit D**, p. 79]  When Mr. Eason exited the doors and started towards the stairway, defendant Conley blocked his path, either deliberately colliding with him, on the stairwell or at the top of the stairs, or unable to move out of the way fast enough to avoid the collision.  [**Exhibit D**, p. 79-81]

If defendant Conley did not have the time to avoid a collision with Mr. Eason, there is no reason to think that Mr. Eason had any more opportunity to avoid an accidental collision.  There is no evidence that Mr. Eason did anything other than accidentally bump into defendant Conley or had any more ability to avoid the collision than did defendant Conley and certainly no evidence that Mr. Eason intended to collide with defendant Conley.  Indeed, defendant Conley conceded that Mr. Eason "may have been surprised".  [**Exhibit D**, p. 88]

In order to arrest and charge Mr. Eason with assault and battery on a police officer, the defendants needed probable cause to believe that Mr. Eason "purposefully made unwelcome contact with" defendant Conley. _United States v. Fernandez_, 121 F.3d 777, 778 (1st Cir.1997). The key word is "purposefully". It has long been established that the in order to support a charge of assault and battery, the "touching must be intentional and not accidental". _Com. v. Moore_, 36 Mass.App.Ct. 455, (Mass.App.Ct.,1994) Here, none of the defendants made any observations that would support their conclusion that Mr. Eason intentionally ran into defendant Conley.

Despite seeing Mr. Eason was coming out the door towards him, defendant Conley claims that he had insufficient time to move to the side, testifying that "all I really had time to do was brace myself because he ran right into me". [**Exhibit D**, p. 80-81] There is no evidence to suggest that Mr. Eason had any more of a chance to avoid the collision. In fact, there is evidence is to the contrary: Mr. Eason's testimony is that when he exited the building, he never saw anyone at all, let alone defendant Conley. [Deposition of Eric Eason, Vol, I, **Exhibit G**, p. 106, 110-111] Thus there is absolutely no evidence that Mr. Eason intended to run into anyone. Indeed, defendant Conley acknowledged at his deposition was unable to say that Mr. Eason ran into him on purpose. [**Exhibit D**, p. 84-85]

Where defendant Conley and Mr. Eason collided so quickly that defendant Conley was unable to do anything other than brace himself, there were no facts that would lead a reasonable officer to conclude that Mr. Eason saw defendant Conley coming and intentionally ran into him. No defendant observed Mr. Eason do anything at the time of the collision either to protect himself or attack defendant Conley. Thus, the defendants has no specific, articulable facts that

would support arresting Mr. Eason and charging him with assault and battery on a police officer.

The clerk magistrate recognized the absence of probable cause and dismissed the criminal charges brought by the defendants at a probable cause hearing.

As they had no information and made no observations that would even suggest Mr. Eason intentionally ran into defendant Conley, the defendants lacked probable cause to arrest Mr. Eason and charge him with assault and battery on a police officer.  The clear implication is that the criminal charges were brought solely in an attempt to cover up the defendants' use of force in fracturing Mr. Eason's ankle.

## IV.  CONCLUSION

As the defendants were without basis to pursue, stop and seize Mr. Eason, summary judgment should issue on the false arrest and false imprisonment claims (counts II and V of the amended complaint) and on the malicious process and abuse of process claims (counts III and IV of the amended complaint), as there was never any probable cause or other basis to arrest Mr. Eason.

Where there was never any probable cause to stop, seize or arrest Mr. Eason, the plaintiff is also entitled to summary judgment on counts VII and VIII, based, respectively, on 42 U.S.C. §1983 (Count VII) and the Massachusetts Civil Rights Act M.G.L. ch. 12 § 11I (Count VIII).

Wherefore, summary judgment should enter for the plaintiff on these counts, and the matter set down for trial on the remaining counts (count I, Assault and Battery; count VI for infliction of emotional distress: and counts IX and X, for negligent supervision and a Monell failure to supervise claim) and for trial on the question of damages.

Respectfully submitted,
Plaintiff by counsel,

Date: <u>June 10, 2011</u>                    <u>/s/ Andrew M. Fischer</u>
                                            Andrew M. Fischer
                                            BBO# 167040
                                            Andrew J. Brodie III
                                            BBO# 661269
                                            JASON & FISCHER
                                            47 Winter Street, #4
                                            Boston, MA 02108
                                            (617) 423-7904
                                            afischer@jasonandfischer.com
                                            abrodie@jasonandfischer.com

## CERTIFICATE OF SERVICE

    I, Andrew M. Fischer, hereby certify that a copy of Plaintiff Motion for Summary Judgment was served upon the attorneys of record for each other party by filing through the CM/ECF system on June 10, 2011.

                                            <u>/s/ Andrew M. Fischer</u>

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1 (A)(2)

    Now comes Andrew J. Brodie, counsel for the plaintiffs. who certify's that he conferred with counsel for the defendants by phone on June 10, 2011, regarding plaintiff's motion for summary judgment.

Date:   <u>June 10, 2011</u>                 <u>/s/ Andrew Brodie</u>
                                            Andrew J. Brodie

Eason/mtnsj.wpd

-14-