United States District Court
District of Massachusetts

```
_____
                              )
ERICK EASON,                  )
         Plaintiff,           )
                              )
         v.                   )      Civil No.
                              )      09-11278-NMG
ANTHONY ALEXIS, JAMES CONLEY, )
THOMAS SULLIVAN, LYSANDER     )
WRIGHT, EDWARD DAVIS, and the )
CITY OF BOSTON,               )
         Defendants.          )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This case arises from the arrest of plaintiff Erick Eason
("Eason") for assault and battery on a public employee on
February 9, 2007. Eason brings suit against defendant police
officers Anthony Alexis ("Officer Alexis"), James Conley
("Officer Conley"), Thomas Sullivan ("Officer Sullivan"), and
Lysander Wright ("Officer Wright") for assault and battery, false
arrest, malicious prosecution, abuse of process, false
imprisonment, intentional infliction of emotional distress and
federal and state civil rights violations. Eason also brings
suit against Boston Police Commissioner Edward Davis
("Commissioner Davis") and the City of Boston, as the
municipality in control of the Boston Police Department ("City of
Boston"), alleging a failure to train and supervise appropriately
the individual officers, in violation of 18 U.S.C. § 1983.

## I.  <u>Factual background</u>

On the night of February 9, 2007, Officers Alexis, Conley, Sullivan and Wright were dispatched to 214 Harvard Street in Dorchester, in response to a 911 call from a woman reporting threats made by people in front of the building, one of whom she claimed had a gun.  Officers Alexis and Sullivan were the first to arrive on scene.  They did not see anyone in front of the building, so they proceeded to the front lobby where they observed Eason walking at a quick pace toward the door.  Officers Alexis and Sullivan followed Eason through the lobby and out the door.  Eason was on his way to work and was not aware that the officers were following him.

Around that time, Officers Conley and Wright arrived on the scene.  While Wright parked the vehicle, Conley approached the building.  As Conley ascended the front steps of the porch, Eason came out of the building with Officers Alexis and Sullivan close behind.  At that point, the stories diverge.

Eason stated in his deposition that he was tackled and thrown over the porch railing by one or more of the police officers.  He stated that he did not see which or how many of the officers tackled him but recalls that he was hit in the front and in the back.

Officer Conley stated that Eason ran into him, not the other way around.  Officers Alexis and Sullivan deny hitting Eason from

behind and Officer Sullivan reported that Eason was propelled over the railing by the force of the collision. Officer Alexis stated that, after the men collided, Eason attempted to jump over the railing but got his foot caught and fell to the ground.

However it happened, Eason came to be lying on the ground in front of the porch. Officer Sullivan drew his firearm, pointed it at Eason and said "Don't move." Officer Alexis frisked and handcuffed Eason and placed him under arrest for assault and battery on a public employee. Eason was not carrying a weapon or contraband. After observing Eason's ankle bone protruding from his sock, one of the officers called an ambulance. Officer Alexis accompanied Eason in the ambulance on the way to the hospital where Eason's injury was diagnosed as a broken ankle.

On February 12, 2007, Officers Alexis and Sullivan applied for a criminal complaint against Eason for assault and battery on a public employee but no criminal complaint ever issued.

## II. <u>Procedural history</u>

On March 5, 2009, Eason filed a complaint in the Massachusetts Superior Court for Suffolk County. Defendants timely removed to federal court. Eason later amended the complaint to add Officer Wright as a defendant. On September 10, 2009, Commissioner Davis and the City of Boston moved to dismiss Counts IX and X of the complaint. In August, 2010, Magistrate Judge Marianne Bowler issued a Report and Recommendation

recommending the allowance of defendants' motion to dismiss with respect to Count IX and its denial with respect to Count X. District Court Judge Patti Saris adopted the Report and Recommendation in September, 2010, and Count IX alleging negligence under M.G.L. c. 258 was dismissed.

In June, 2011, Eason filed a motion for partial summary judgment, which Defendants opposed, arguing that he is entitled to judgment as a matter of law on Counts II, III, IV, V, VII and VIII because defendants had no probable cause to stop, seize or arrest him. Defendants filed cross motions for summary judgment on all Counts, which Eason opposed, and a motion to strike portions of plaintiff's statement of undisputed facts. Those motions are currently before the Court.

## III. **Legal Analysis**

### A. **Motion to Strike**

Defendants move to strike paragraphs 4, 5, 9, 11, 16 and 18 of Eason's Statement of Undisputed Facts, alleging that the so-called facts contained in those paragraphs are either disputed or directly contradicted by the undisputed factual record. The Court will deny that motion with the caveat that it will disregard "facts" that are not presented in accordance with the rules applicable to summary judgment motions.

## B. Motion for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). Summary

judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### 1. Count I - Assault and battery

Count I alleges that Officers Alexis, Conley, Sullivan and Wright used excessive force against Eason on the night of February 9, 2007. Where, as here, a plaintiff brings both a § 1983 excessive force claim and a common law claim for assault and battery, the Court's determination of the reasonableness of the force used with respect to the § 1983 claim controls its assault and battery analysis. Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Accordingly, the Court will consider Eason's assault and battery claim together with the § 1983 claim below.

### 2. Count II - False arrest

Count II alleges that Officers Alexis, Conley, Sullivan and Wright arrested Eason without probable cause on the night of February 9, 2007.

To maintain a cause of action for false arrest under Massachusetts law, a plaintiff must establish that 1) the defendant arrested the plaintiff and 2) without probable cause. Lucas v. City of Boston, No. 07-cv-10979-DPW, 2009 WL 1844288, at *25 (D. Mass. June 19, 2009) (citing Mass. Sup. Ct. Jury Instructions § 23.5). The parties do not dispute that defendant

officers arrested Eason, so the Court will assess whether they have established probable cause, or Eason has established the absence thereof, as a matter of law.

The key question is whether the information available to Officers Alexis and Sullivan at the time of the arrest was sufficient to lead an ordinarily prudent officer to conclude that Eason had committed assault and battery on a public employee, the crime for which he was arrested. See Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (setting forth the probable cause standard).

If a jury were to believe the officers' version of events, it would be permitted to answer in the affirmative. After all, Officers Alexis and Sullivan allegedly witnessed Eason collide with Officer Conley, a public employee engaged in the performance of his duty, and attested that, as they perceived the situation, Eason either intentionally ran into Officer Conley or, at the very least, recklessly caused the collision by barging out the door so quickly. See Commonwealth v. Correia, 737 N.E.2d 1264, 1265-66 (Mass. App. Ct. 2000) (construing the elements of assault and battery on a public employee, M.G.L c. 265, § 13D).

If, however, a jury were to believe Eason's version of events, it could just as easily find that the officers had no probable cause to arrest him. According to Eason, he was walking out the door of the building on his way to work when one or more

of the officers, under the mistaken impression that Eason was involved in the disturbance to which they were responding, tackled him without cause or provocation.  If the circumstances were as Eason alleges, Officers Alexis and Sullivan would not have had probable cause to arrest him.

Summary judgment is inappropriate when, such as here, conflicting versions of events raise a genuine issue as to whether police officers reasonably believed they had probable cause to arrest a suspect. See Santiago v. Fenton, 891 F.2d 373, 383-84 (1st Cir. 1989) (dispute over whether defendant threw a snowball "recklessly" precludes summary judgment on probable cause); Davila-Lynch v. City of Brockton, No. 09-10817-RGS, 2011 WL 4072092, at *5 (D. Mass. Sept. 12, 2011) (dispute over whether suspect was intoxicated at the time of the arrest, or whether the officer's intoxication allegation was "an after-the-fact contrivance intended to cover up the officer's unlawful conduct," precludes summary judgment on probable cause).  As more than one Session of this Court has recognized,

> where a claim of a civil rights violation is predicated
> upon an improper arrest based on a lack of probable
> cause, the probable cause determination is better left
> for the trier of fact.

Gross v. Bohn, 782 F. Supp. 173, 179 (D. Mass. 1991) (citing for that proposition Woodley v. Town of Nantucket, 645 F. Supp. 1365, 1370-71 (D. Mass. 1986)).  For those reasons, neither Officers Alexis and Sullivan nor plaintiff Eason is entitled to summary

judgment on Count II.

Summary judgment is, however, warranted with respect to Officers Conley and Wright. They did not arrest Eason and therefore, as a matter of law, cannot be liable for false arrest. See Commonwealth v. Botari, 482 N.E.2d 321, 324-25 (Mass. 1985) (explaining that a police officer does not "arrest" a suspect unless he physically seizes the suspect or the suspect submits to his authority and control).

Officer Wright is also entitled to summary judgment on the remaining Counts. Eason makes only one factual allegation against Officer Wright in the Statement of Undisputed Facts supporting his summary judgment motion: that Officer Wright was dispatched to 214 Harvard Street on the night of February 9, 2007. The undisputed facts indicate that during Eason's altercation with the other officers at the front entrance to the building, Officer Wright was approximately 40 feet away. He never pursued or touched Eason or accompanied him to the hospital. Officer Wright issued no instructions to the other officers on the scene, did not assist in the application for a criminal complaint and never attended any court proceeding involving Eason.

Officer Wright was not personally involved in Eason's pursuit or arrest, the bases for Eason's § 1983 claim, so liability cannot attach as a matter of law. Cepero-Rivera v. Fagundo, 414

F.3d 124, 1129 (1st Cir. 2005) (explaining that in a § 1983 action against a police officer, "[l]iability may be found only if there is personal involvement of the officer being sued"). Nor could a reasonable jury find Officer Wright liable for the state-law violations given the undisputed facts detailed above.

Eason's attempts to establish Officer Wright's personal involvement, while creative, are unavailing. Eason argues that Officer Wright should be liable on all Counts, even though he did not so much as touch Eason, because he was a joint venturer with the other officers and failed to intervene. Just as Eason offers no evidence that Officer Wright used force against him, he likewise offers no evidence that Officer Wright purposefully aided and abetted the other officers in using excessive force. Nor did Officer Wright have a realistic opportunity to intervene in the split-second altercation, seeing as he was standing 40 feet away.

For all of those reasons, the Court will allow Officer Wright's motion for summary judgment in its entirety.

### 3. Count III - Malicious prosecution

Count III alleges that Officers Alexis, Conley, Sullivan and Wright caused a criminal complaint to issue without probable cause. In his reply brief, Eason concedes that the Count should be dismissed because no criminal complaint actually issued. The Court agrees and will dismiss it for that reason.

### 4.   Count IV - Abuse of process

Count IV alleges that the individual officers employed the legal process for a purpose for which it was not intended: namely, to cover up the wrongful beating and arrest of Eason and to impede him from seeking redress.

In Massachusetts, a claim for abuse of process lies where a police officer brings criminal charges against a defendant for "an ulterior or illegitimate purpose." <u>Gutierrez</u> v. <u>Mass. Bay Transp. Auth.</u>, 772 N.E.2d 552, 563 (Mass. 2002).  An application for a criminal complaint constitutes "process" under the statute. <u>See</u> <u>Gouin</u> v. <u>Gouin</u>, 249 F. Supp. 2d 62, 76 (D. Mass. 2003).  It is undisputed that Officers Alexis and Sullivan initiated process against Eason by applying for a criminal complaint.  The sole issue is whether a genuine factual dispute exists over the officers' purpose for filing it.

On the one hand, if the officers used excessive force against Eason only to discover that he was not armed or in any way related to the disturbance to which they were responding, a jury could reasonably infer that the officers might have charged Eason with a crime to cover up their misdeeds. <u>See</u> <u>Philbrook</u> v. <u>Perrigo</u>, 637 F. Supp. 2d 48, 54-55 (D. Mass. 2009) (denying summary judgment on abuse of process count because a jury could reasonably infer from the circumstances that officers initiated process to cover up their wrongful arrest of defendant).  On the

other hand, if a jury were to find, as it could from the record, that Eason intentionally or recklessly caused the collision, the officers were within their rights to charge Eason with a crime. Given that factual dispute, Officers Alexis and Sullivan and plaintiff Eason are not entitled to summary judgment on Count IV.

In contrast, Officers Conley and Wright are entitled to summary judgment on Count IV because they took no part in applying for the complaint.

### 5.    Count V - False imprisonment

Count V alleges that Officers Alexis, Conley, Sullivan and Wright unjustifiably held Eason in custody after his arrest.

Probable cause to arrest is a complete defense to the tort of false imprisonment. M.G.L. c. 231, § 94A; Philbrook v. Perrigo, 637 F. Supp. 2d 48, 53 (D. Mass. 2009).  Because the Court has already concluded that the existence of probable cause is a matter for the jury, see Part III.B.2 supra, it will deny the summary judgment motions of Officers Alexis and Sullivan and plaintiff Eason on Count V.  Eason does not allege that Officers Conley and Wright arrested or confined him, however, so they are entitled to summary judgment on this Count.

### 6.    Count VI - Intentional infliction of emotional distress

Count VI alleges that the conduct of Officers Alexis, Conley, Sullivan and Wright was outrageous and that the officers should have known that it would inflict severe emotional distress

on Eason.

To maintain a cause of action for intentional infliction of emotional distress ("IIED") under Massachusetts law, a plaintiff must establish that 1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct, 2) defendants' conduct was extreme and outrageous beyond all bounds of decency, 3) defendants' actions were the cause of plaintiff's distress and 4) the distress was severe that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976).

While false arrest, without more, cannot give rise to an IIED claim, Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994), Eason alleges that far more happened in this case: one or more officers tackled him without cause, threw him over the porch railing, breaking his ankle severely, pointed a loaded gun at him and filed a criminal complaint against him to cover it all up.

Whether those allegations are enough to sustain an IIED claim is a close call, especially given the subjectivity inherent in deciding whether conduct is "extreme and outrageous" and emotional distress is "severe." The First Circuit's opinion in a case with analogous facts is instructive. See Poy v. Boutselis, 352 F.3d 479, 485-86 (1st Cir. 2003). In Poy, as in this case, the plaintiff alleged that he was peacefully leaving a building

when a police officer hit him from behind and then arrested him
without probable cause. Id. at 482-83.  Similarly, the plaintiff
was hospitalized for his injuries but did not require psychiatric
treatment.  The First Circuit held that such allegations, if
credited by a jury, are enough to support a claim for IIED. See
id. at 485-86.  Given that precedent and viewing the record in
the light most favorable to the non-moving party, Eason's
allegations are sufficient to avoid summary judgment on his IIED
claim against Officers Alexis, Sullivan and Conley.

### 7.  Count VII - § 1983 violations

To establish liability under the Federal Civil Rights Act,
42 U.S.C. § 1983, a plaintiff must prove that the defendant,
while acting under color of law, deprived him of a right or
privilege secured by the Constitution or laws of the United
States. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st
Cir. 2000).  Eason alleges that Officers Alexis, Conley, Sullivan
and Wright violated his Fourth Amendment rights by stopping,
assaulting and arresting him without justification.

Where, as here, a person contends that a police officer used
excessive force in the context of a stop or arrest, the claim is
analyzed under the Fourth Amendment's reasonableness standard.
Graham v. Connor, 490 U.S. 386, 394-395 (1989).  While the
reasonableness standard "is not capable of precise definition or
mechanical application," its proper application requires careful

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 396.

It is black-letter law that, in making an arrest or an investigatory stop, police officers have the right to employ "some degree of physical coercion or threat thereof to effect it." Id. Officers must "make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances," and, for that reason, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will give rise to a constitutional violation. Id. The amount of force used, however, must be reasonable.

While both parties have moved for summary judgment on this Count, a genuine issue of material fact remains. The parties do not dispute that, immediately prior to the incident, Eason was walking quickly and unaware that Officers Alexis and Sullivan were pursuing him. Nor do they dispute that, as a result of the collision between Eason and at least one of the officers, Eason went over the railing and suffered a fractured ankle.

What is in dispute is the cause and nature of the collision. Eason claims that Officer Conley grabbed him in the front and

either Officer Alexis or Officer Sullivan grabbed him from behind and, together, the officers threw Eason over the railing.  The officers contend that Eason initiated the contact with Officer Conley and hurt his ankle attempting to jump over the railing. The parties are the only witnesses to the collision and no additional evidence tends to discredit either side's account.  A reasonable finder of fact could return a verdict for either side on the excessive force claim, depending on whose version of the story it believes. Compare Argo v. Woods, 399 Fed. App'x 1 (5th Cir. 2010) (affirming jury finding that officers used excessive force because they threw a suspect off his porch without probable cause to arrest him), with Dennis v. Upshaw, 9 F.3d 1547 (5th Cir. 1993) (affirming bench trial finding that officers did not use excessive force because defendant initiated altercation).

Because the parties dispute who initiated the contact and whether Eason jumped or was thrown over the porch balcony, summary judgment is unwarranted on this Count. See Totten v. City of Torrance, No. CV 10-7050-ODW, 2011 WL 4528191, at *5 (C.D. Cal. Sept. 30, 2011) (denying summary judgment on excessive force claim because of factual dispute over which party initiated contact).  For the same reasons, the cross motions for summary judgment on the assault and battery Count will be denied.

### 8.   Count VIII - MCRA violation

To establish his claim under the Massachusetts Civil Rights

Act ("MCRA"), Eason must show that 1) Officers Alexis, Conley, Sullivan and Wright threatened, intimidated or coerced him 2) to prevent him from exercising a constitutional right. <u>Spencer</u> v. <u>Roche</u>, 755 F. Supp. 2d 250, 267 (D. Mass. 2010). The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." <u>Columbus</u> v. <u>Biggio</u>, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) (quoting <u>Swanset Dev. Corp.</u> v. <u>City of Taunton</u>, 668 N.E.2d 333, 338 (Mass. 1996)); <u>see also</u> <u>Gallagher</u> v. <u>Commonwealth</u>, No. 00-11859-RWZ, 2002 WL 924243, at *3 (D. Mass. March 11, 2002) ("The use of force is not, in itself, coercive within the meaning of the act unless such force is inflicted in order to achieve some further purpose."); <u>Goddard</u> v. <u>Kelley</u>, 629 F. Supp. 2d 115, 129 (D. Mass. 2009) (explaining that a contrary reading would "would torture the [MCRA] well beyond its plain meaning").

Eason claims that the officers physically coerced him into forgoing his constitutional right to be free from unreasonable seizures, excessive force and unlawful arrest by shoving him over the railing and later arresting him. Similar to the plaintiffs in <u>Goddard</u> and <u>Gallagher</u>, Eason conflates the two MCRA requirements. Eason's seizure and arrest cannot satisfy both the "coercion" and "violation" elements absent some evidence that the initial force was intended to coerce Eason. <u>Gallagher</u>, 2002 WL

924243, at *3 (explaining that "the constitutional violation itself cannot also serve as the prerequisite threats, intimidation or coercion" under the MCRA).  Finding none here, Eason's MCRA claim fails as a matter of law and, therefore, all of the defendants are entitled to summary judgment on Count VIII.

### 9.    Count X - <u>Monell</u> violation

Count X alleges that Commissioner Davis and the City of Boston 1) maintained a policy and custom of "failing to train, supervise, investigate, and discipline police officers properly and reasonably" which 2) evinced "deliberate indifference" and 3) directly caused the deprivation of Eason's civil rights.

Eason elaborates on his <u>Monell</u> claim in his opposition brief, alleging that the City of Boston's "systematic practice of ignoring officers' misconduct" and "whitewashing citizen complaints" sent a message to Officers Alexis, Conley and Sullivan that they could act with impunity.  Eason concedes that none of the officers who allegedly laid hands on him during the arrest had any excessive force complaints on their records.  He bases his claim entirely on the City of Boston's alleged failure to discipline adequately Officer Wright, against whom seven citizen complaints have been filed over his 20-plus years as a police officer.

A municipality is not vicariously liable under § 1983 for the conduct of its officers. <u>Estate of Bennett</u> v. <u>Wainwright</u>, 548

F.3d 155, 177 (1st Cir. 2008).  For liability to attach under Monell, in addition to establishing a constitutional deprivation, the plaintiff must show that: 1) the municipality had a custom, policy or practice of failing to investigate, discipline, supervise or train its officers, which 2) demonstrated a "deliberate indifference" to the rights of those citizens with whom its officers came into contact and 3) directly caused the alleged constitutional violation.

Evidence of citizen complaints against an officer, without more, does not suffice to show a municipal custom of permitting or encouraging excessive force. Trinidad v. City of Boston, No. 07-11679-DPW, 2010 WL 2817186, at *11 (D. Mass. July 16, 2010). A plaintiff must, at the very least, produce evidence that serious prior incidents similar to the alleged constitutional violation in question put the municipality on inquiry notice of an officer's danger to the public and that the police department's policy of ignoring or covering up those incidents was "the moving force" behind the alleged violation. See Young v. City of Providence, 404 F.3d 4, 25-28 (1st Cir. 2005).

Eason has failed to meet his burden.  None of the complaints against Officer Wright has anything to do with the kind of constitutional violations alleged in this case.  Four complaints relate to altercations with Officer Wright's family members.  Two allege that he acted disrespectfully toward citizens.  Only one

of the seven complaints alleges excessive force and the circumstances of that incident indicate that Officer Wright "grabbed a girl by the wrist" during the course of ejecting her from the Fleet Center during a concert.  That allegation of excessive force, which was ruled factually unfounded by the Internal Affairs Department ("IAD"), bears no similarity to the alleged violation in this case and, therefore, cannot support Eason's <u>Monell</u> claim. <u>See Maldonado-Denis</u> v. <u>Castillo-Rodriguez</u>, 23 F.3d 576, 583 n.5 (1st Cir. 1994) (explaining that citizen complaints with little similarity to the alleged violation cannot be used to support a <u>Monell</u> claim).

Moreover, the record indicates that IAD properly investigated those complaints and punished Officer Wright for those deemed to be credible.  IAD's response further undercuts Eason's claim that officer misconduct was ignored and unpunished.

Because Eason has failed to carry his burden of showing that there is a genuine, triable issue of <u>Monell</u> liability, Commissioner Davis and the City of Boston are entitled to summary judgment on that Count.

**ORDER**

In accordance with the foregoing,

1)     Plaintiff Eason's motion for partial summary judgment (Docket No. 107) is **DENIED,**

2)     The cross-motions for summary judgment of Officer Alexis (Docket No. 111) and Officer Sullivan (Docket No. 113) are, with respect to Counts III and VIII, **ALLOWED,** but are, with respect to Counts I, II, IV, V, VI and VII, **DENIED,**

3)     Officer Conley's cross-motion for summary judgment (Docket No. 115) is, with respect to Counts II, III, IV, V and VIII, **ALLOWED,** but is, with respect to Counts I, VI and VII, **DENIED,**

4)     Defendant Officer Wright's cross-motion for summary judgment (Docket No. 117) is **ALLOWED** in its entirety,

5)     The cross-motion for summary judgment of Commissioner Davis and the City of Boston (Docket No. 119) is **ALLOWED,** and

6)     Defendants' motion to strike portions of plaintiff's statement of undisputed facts (Docket No. 110) is **DENIED.**

**So ordered.**

                    /s/ Nathaniel M. Gorton
                    Nathaniel M. Gorton
                    United States District Judge
Dated November 10, 2011